**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JASON PETTIS,

    Petitioner,

v.

WILLIE BONDS, et al.,

    Respondents.

Civil Action No. 18-11626 (MAS)

**OPINION**

**SHIPP, District Judge**

  This matter comes before the Court on Petitioner's Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition. (ECF No. 5.) Petitioner did not file a reply. For the following reasons, this Court will deny the Petition, and will deny Petitioner a certificate of appealability.

**I.**  **BACKGROUND**

  In its opinion affirming Petitioner's conviction on direct appeal, the Superior Court of New Jersey – Appellate Division summarized the factual background of Petitioner's convictions as follows:

> Following an October 2011 jury trial, [Petitioner] was convicted of second-degree aggravated assault . . . as a lesser included offense of first-degree attempted murder, . . . second-degree unlawful possession of a weapon, . . . and second-degree possession of a weapon for an unlawful purpose[.] . . . In a second trial,[] the same jury convicted [Petitioner] of second-degree possession of a weapon by a prohibited person . . .
>
> On December 22, 2011, [Petitioner] was sentenced to an extended term of fifteen years imprisonment on the aggravated

assault charge, with an eighty-five percent period of parole ineligibility. . . [Petitioner received concurrent prison terms on the remaining charges from the first trial and a] consecutive five-year sentence with no parole ineligibility . . . on the certain persons not to have weapons offense. Therefore, [Petitioner] was sentenced to an aggregate twenty-year term of imprisonment[.]

. . . .

. . . [Petitioner] was charged with the May 22, 2009[,] shooting of Jarred Campfield. At trial, Campfield testified that he knew [Petitioner] because he was previously involved in a relationship with the mother of [Petitioner]'s child, and that some "hostility" existed between the two men. According to Campfield, approximately five or six days before the shooting [Petitioner] had approached him on the street "and asked me about something that I allegedly said about him," and stated "we're going to handle this right now." Campfield observed [Petitioner] reach into his pocket, and thought he was going for a weapon, but later determined it was a can of soda. Campfield proceeded to "beat him up" and "slammed him on his head a couple of times. Kicked him in his face." The incident occurred at the intersection of Van Dyke Avenue and Wright Place, in front of an apartment complex where [Petitioner] resided. Campfield testified that as he went to leave, [Petitioner] said "[d]on't come back to Wright Place, I got you."

Some five or six days later, as Campfield was traveling down Wright Place, he saw two people he knew from the neighborhood, "Twist" and "Rob," and he asked Rob for a cigarette. As he turned to leave, someone approached him and said "what's up home boy." Campfield testified that the man reached into his waistband and pulled out a black handgun and pointed it at him from a distance of approximately ten or twelve feet. He described the man as a black male, approximately five feet, ten inches tall, weighing between 120 and 150 pounds. The man opened fire and shot Campfield seven times, causing him to fall to the ground. He managed to get up and heard the shooter say "I told you [I] was going to get you." The shooter then ran off towards Van Dyke Avenue and the apartment complex.

Campfield dialed 9-1-1 from his cell phone and numerous police officers arrived within minutes. He testified that the officers asked him questions about who the shooter was, and he was able to give them a brief description of the shooter, but was "delirious" and asked them to question him later. Campfield was taken by ambulance to the hospital where he remained for five or six days.

2

When shown the police report to refresh his recollection at trial, Campfield testified he really did not know who shot him, and that he did not provide the detectives with a name, despite the fact that the report indicated that at the scene he stated [Petitioner] had shot him.

On cross-examination, Campfield testified that he had been attacked a week before the shooting by a man named Solomon Castleberry. He stated that Castleberry lived across the street from where the shooting took place, but that he knew "for a fact, [the shooter] wasn't Solomon Castleberry." Campfield further testified that the same day he was attacked by Castleberry, he was involved in an altercation with a member of the "Bloods" gang, but that it "was cleared up very, very fast."

Robert VanAnglen, a mutual acquaintance of [Petitioner] and Campfield, testified that he witnessed the shooting, and identified [Petitioner] as the shooter. He stated that he heard [Petitioner] say "what's up, home boy" to Campfield before shooting him five to seven times.

Officer Thomas Hetzler and Sergeant Mark Pappas were among the first to respond to the shooting scene. Hetzler asked Campfield who the shooter was and Campfield responded "it was Jason," and that "he was wearing a white t-shirt, blue jeans, and he had dreadlocks." Similarly, Pappas testified that Campfield said that a member of the Crips, named Jason, had shot him.

[Petitioner]'s probation officer, Cesar Leduc, was allowed to testify, over defense objection, that [Petitioner] was "a participant in [a] program operated by the State of New Jersey." Leduc indicated that pursuant to the terms of the program, [Petitioner] was required to report to him on a regular basis and was not permitted to leave the State without Leduc's permission. Leduc also testified that in 2010, he became aware that [Petitioner] left New Jersey without his permission and was later located in the State of Illinois[, approximately a year after a warrant for his arrest had been issued].

Shortly before trial was scheduled to commence, [Petitioner] was being held in the county jail with another inmate, Jomas Arrington. Arrington made a phone call to Darnell Waters, Campfield's cousin, and a few minutes later [Petitioner] joined in on the call. During this conversation, [Petitioner] stated "if you know where Ern['s] little brother [is] . . . I need you to tell him he cannot come [to testify] at all, man. Like my life [is] in his hands." At trial, VanAnglen testified that he had an older brother named "Ernest." Waters indicated to [Petitioner] during the call that he

3

would "find him today. Don't worry about it." This conversation was recorded, and the State sought to introduce it at trial. The [trial] court initially ruled the recording inadmissible[, but t]he trial judge then reversed his ruling the following day, and admitted the recording into evidence.

[Petitioner] did not testify or call any witnesses. The jury found [Petitioner] not guilty of the attempted murder charge, but convicted him of the lesser-included second-degree aggravated assault and the weapons offenses.

(ECF No. 6-6 at 1-7.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

#### A. Petitioner's evidentiary claims

In his first series of claims, Petitioner argues that the state trial court erred in admitting various forms of testimony at trial. Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), claims challenging the admissibility of testimony or other evidence are normally considered questions of state law which are not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *see also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). A habeas petitioner may therefore raise a habeas claim based on a state law evidentiary decision only where he can show that the admission of the evidence in question denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J.

5

dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

Petitioner first argues that the trial court erred in permitting his probation officer to testify that Petitioner, at the time of the shooting, had been enrolled in a state program which did not permit him to leave the state without permission, and that Petitioner failed to make his required appointments and did not request or receive permission to leave the state. Petitioner contends that this testimony was unduly prejudicial because he believes the jury *must* have concluded he was on probation or the like and the officer's testimony was thus unduly prejudicial in light of the limited purpose of showing that Petitioner's flight from the state indicated his consciousness of guilt. On direct appeal, the Appellate Division rejected this claim, finding that the probation officer's testimony was properly admitted under state law evidentiary rules for the purposes of showing Petitioner's flight as evidence of consciousness of guilt and to rebut Petitioner's contention that he left the state to visit family in Illinois. (ECF No. 6-6 at 8-11.) The Appellate Division likewise found that the sanitization of the officer's testimony – referring only to a "state program" and providing the jury with a limiting instruction which informed the jury that there were many such programs including programs related to employment, education, and housing, and that the jury therefore should not conclude that this program was in any way connected with illegal activity or

6

draw any adverse inference against Petitioner based on his involvement in the program – more than alleviated any undue prejudice which could result from the officer's testimony. These conclusions are well supported by the factual record of this matter, and Petitioner has failed in any way to show that this ruling was contrary to or an unreasonable application of applicable federal law. As it is clear that the trial court's sanitization efforts – including its clear limiting instruction – alleviated much, if not all, undue prejudice resulting from the officer's testimony, and as the officer's testimony in any event did not render Petitioner's criminal trial fundamentally unfair, Petitioner is not entitled to habeas relief on this claim. *Glenn*, 743 F.3d at 407.

Petitioner next argues that the trial court erred in refusing to grant him a mistrial following counsel's objection to Sergeant Pappas testifying that the victim, as part of his description of the man who shot him, stated that it was a "crip" from the area named Jason. The Appellate Division rejected this claim on direct appeal, finding that the statement amounted to a single statement which the State had not specifically sought to elicit, that Petitioner himself had brought gang affiliations into trial when counsel questioned the victim on cross examination as to his conflict with an alleged member of the "Bloods" gang, and that the trial court had properly addressed any prejudice flowing from the sergeant's "crip" statement by providing the jury with a strong jury instruction that they should not consider any reference to gangs of any sort in their deliberations which was developed with Petitioner's trial counsel. (ECF No. 6-6 at 12-14.) Petitioner has neither shown that this conclusion is contrary to or an unreasonable application of federal law nor that the conclusion was unreasonable in light of the facts of Petitioner's case. Having reviewed the isolated statement made by the sergeant, the strong and targeted limiting instruction given by the trial court, and in light of the strong eyewitness evidence of Petitioner's guilt, this Court finds that this isolated statement referencing gang affiliation was not so prejudicial that it denied

7

Petitioner a fundamentally fair trial, and the state court's handling of this issue therefore does not warrant habeas relief. *Glenn*, 743 F.3d at 407.

In his final evidentiary claim, Petitioner contends that the state trial court improperly admitted the three-way phone call in which he discussed apparent attempts at witness tampering directed towards swaying the victim and VanAnglen from testifying against him, which Petitioner contends was unduly prejudicial, amounted to improper evidence of other bad acts, and in any event does not support an inference of attempted witness tampering. The Appellate Division rejected this claim on direct appeal, finding that the conversation was admissible as the recording supported the inference that Petitioner was or had attempted to engage in witness tampering and that these efforts – as well as his acknowledgement that the witnesses held his life in their hands – strongly indicated Petitioner's consciousness of guilt and was therefore far more probative of Petitioner's guilt than prejudicial. (ECF No. 6-6 at 13-15.) Petitioner has not shown that this decision was contrary to or an unreasonable application of federal law – indeed, he likely could not as the Supreme Court has never expressly held that other crimes evidence must be excluded from trial or that such testimony requires a specific form of limiting instruction. *See generally Estelle*, 502 U.S. 62; *Greer v. Miller*, 483 U.S. 756 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967); *see also Minett v. Hendricks*, 135 F. App'x 547, 553 (2005). The Appellate Division's conclusion that the evidence in question was highly probative of guilt and especially Petitioner's consciousness of guilt is likewise well supported by the evidence. In light of the recording's strong probative value as evidence of Petitioner's consciousness of guilt, which clearly outweighs any undue prejudice, and in light of the otherwise strong evidence of Petitioner's guilt produced at trial, it is clear that the admission of the recording did not deny Petitioner a fundamentally fair trial, and Petitioner is therefore not entitled to habeas relief on this or any of his evidentiary claims. *Glenn*, 743 F.3d at 407.

8

## B. Petitioner's ineffective assistance of counsel claims

In his remaining claims, Petitioner asserts that his trial and appellate counsel were constitutionally deficient in their representation of him at trial and on direct appeal. The standard applicable to Petitioner's claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

9

> outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Petitioner first contends that his counsel failed to properly prepare for trial by failing to conduct an interview of the victim, which Petitioner believes could have either supported his defense at trial or resulted in his being able to pursue a more favorable plea offer. As one court in this District has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).
>
> Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,
>
>> a defendant basing an inadequate assistance claim on
>> his or her counsel's failure to investigate must make

10

> "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.
>
> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Here, Petitioner contends that counsel should have found and interviewed the victim prior to trial, and that had counsel done so Petitioner would have had greater evidence to support his defense or could have pursued a more favorable plea agreement. On appeal from the denial of post-conviction relief, the Appellate Division rejected this claim as Plaintiff presented "no competent evidence of what counsel would have discovered had he interviewed Campfield, or how Campfield's testimony or the result at trial would have differed had counsel interviewed him" and Petitioner's claim essentially boiled down to a bald assertion of ineffective assistance of counsel. (ECF No. 6-14 at 8-9.) The Appellate Division likewise noted that the PCR judge – who had also been the trial judge – found that Campfield's testimony was "irrelevant to the State's pre-trial plea offer." (*Id.* at 5.) The Appellate Division's evaluation of Petitioner's claim is entirely accurate. Petitioner provides no evidence as to what counsel would have discovered had he interviewed Campfield prior to trial, nor as to how the outcome of trial would have been any different had the interview occurred. Although Petitioner baldly asserts that an interview of Campfield might have

11

affected his ability to secure a more favorable plea deal or might have affected his decision not to plead guilty prior to trial, he in no way supports this assertion. Given the victim's ultimate testimony at trial, and the resulting admission of his prior identification of Petitioner, it is doubtful that Petitioner could provide such evidence. Ultimately, Petitioner has failed to show that he suffered any prejudice from the failure of counsel to interview the victim – who may well have declined an interview in any event – and he has therefore failed to show ineffective assistance of counsel as to his investigation related claim.

Petitioner next contends that counsel proved ineffective in his opening statement, efforts at cross-examination, and in his closing argument as Petitioner believes that counsel did not do enough to highlight inconsistencies in witness statements, expose the weaknesses in the state's case, or attempt to counter the state's theory of the motive for the shooting – essentially bad blood arising from the victim's relationship with Petitioner's ex-girlfriend and the fight they had had prior to the shooting. The State PCR courts rejected these claims, finding that counsel used his opening and closing arguments to raise issues of misidentification and the state's burden of proof, as well as to highlight inconsistencies and credibility issues, and to question the accuracy of the identification of Petitioner as the shooter. (ECF No. 6-14 at 5-6, 9.) The PCR courts likewise rejected Petitioner's contention that counsel had failed to properly cross-examine witnesses, finding that counsel had used cross-examination to highlight the victim's credibility issues, as well as inconsistencies between the victim's initial description of the shooter and that given by VanAnglen. (*Id.* at 6.) Ultimately, the Appellate Division also concluded Petitioner had suffered no prejudice, especially in light of counsel having secured "a jury verdict of aggravated assault as a lesser-included offense of the charged crime of attempted murder" notwithstanding the strong evidence of Petitioner's guilt provided at trial. (*Id.* at 9.) Having reviewed counsel's opening and closing statements, as well as counsel's cross examination of the witnesses, including the victim

and VanAnglen, this Court agrees with the Appellate Division that Petitioner has utterly failed to show deficient performance or prejudice as to these claims. Counsel used his opening and closing arguments to raise the relevant issues – credibility, identification, and burden of proof – to the jury, and used cross-examination to highlight the credibility issues and conflicting descriptions given by the witnesses of the shooter, and ultimately achieved a verdict in which Petitioner was not convicted of attempted murder. In light of the strong evidence of Petitioner's guilt, it is clear that counsel's performance was not deficient, and Petitioner was not prejudiced by counsel's actions. Petitioner has failed to show that he is entitled to habeas relief on these claims.

Petitioner also attempts to make the more specific argument that counsel proved ineffective in his response to the State's contention that Petitioner fled following the shooting. Counsel did, however, address the issue in summation – a fact to which Petitioner admits. (*See* ECF No. 1 at 27.) During those comments, counsel noted that Petitioner's mother lived in Illinois, and suggested that this presents a viable explanation other than flight for Petitioner's presence outside of New Jersey. Given the strong evidence of Petitioner's guilt, and the three-way phone call evidence which also suggests Petitioner was cognizant of his guilt in this matter, there is simply no reasonable likelihood that the outcome of Petitioner's trial would have been different had counsel spent more time focusing on the issue or the largely irrelevant question of whether Petitioner's ex-girlfriend and daughter may have moved prior to the shooting as Petitioner suggests. Such comments would have done no more than highlight the flight issue and made it stronger, rather than weaker in the minds of the jury. Petitioner has thus failed to show he was prejudiced by counsel's comments on the issue in his summation, and Petitioner has therefore failed to show that he is entitled to relief on this ineffective assistance of counsel claim.

Finally, Petitioner raises two further ineffective assistance of counsel claims without supporting factual assertions – that counsel's errors cumulatively amount to ineffective assistance

13

even if they do not do so individually, and that appellate counsel provided ineffective assistance in failing to raise the claims raised in Petitioner's habeas petition. Turning first to the issue of appellate counsel, Petitioner's claim rests on the idea that his habeas petition had meritorious claims which would have succeeded on appeal which were not raised. Petitioner on that count is mistaken – all of his evidentiary claims *were* raised on direct appeal and failed to warrant relief, and all of the ineffective assistance claims *were* raised during the PCR proceedings and found wanting by the Appellate Division. As all of the claims in Petitioner's habeas petition are without merit, and were rejected on the merits by the Appellate Division, appellate counsel was not ineffective in "failing" to raise them where appropriate – either on direct appeal or during PCR proceedings and the appeal arising out of those proceedings. *See, e.g., See, e.g., Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be ineffective in failing to raise a meritless argument); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (same). Finally, Petitioner's ineffective assistance claims fair no better in the aggregate than they do individually – Petitioner has simply failed to show he was prejudiced by counsel's alleged deficiencies in light of the strong evidence of his guilt provided at trial and the ultimate outcome of counsel's performance – Petitioner being convicted of the lesser included charge rather than attempted murder. Petitioner has thus failed to show an entitlement to relief on any of his ineffective assistance claims, including his cumulative claim. *Strickland*, 466 U.S. at 687-94. As all of Petitioner's habeas claims are without merit, his habeas petition is denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution

14

of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

V. **CONCLUSION**

In conclusion, Petitioner's Petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**